FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

04 MAR 22 PM 12: 39

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | | |
|---|---|---|
| **JAMES CHARLES LAWHORN,** | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | Civil Action Number |
| vs. | ) | **CV-01-C-0029-E** |
| | ) | |
| **MICHAEL W. HALEY, COMMISSIONER,** | ) | |
| **ALABAMA DEPARTMENT OF** | ) | |
| **CORRECTIONS,** | ) | |
| | ) | |
| Respondents. | ) | |

**ENTERED** ⅋
MAR 2 2 2004

**MEMORANDUM OPINION**

The magistrate judge filed a report and recommendation on February 11, 2004, recommending this petition for writ of habeas corpus filed pursuant 28 U.S.C. § 2254 be granted. Petitioner and respondent filed objections.

The court has carefully reviewed and considered *de novo* all the materials in the court file, including the report and recommendation and the objections thereto. The objections of each party shall be addressed separately, beginning with petitioner's objections.

<u>**Petitioner's Objections**</u>

**I. <u>Rule 32 Order</u>**

Petitioner contends the magistrate judge erred when he recommended the findings made by the Rule 32 trial court in its order denying petitioner relief constituted an "adjudication" within the meaning of 28 U.S.C. § 2254(d), which petitioner contends is defined in Black's Law Dictionary as " . . . . the process of judicially deciding a case." (Document #27, at 17-18). Petitioner argues that "the Circuit Court merely signed [an] order [drafted by the state], without adding or deleting

*33*

a word or comma." *Id.* at 18. Thus, he concludes the Circuit Court did not adjudicate (*e.g.,* engage in the process of judicially deciding) this case. Petitioner cites *Helton v. Secretary for Dept. of Corrections,* 233 F.3d 1322, 1326-27 (11th Cir. 2000), to support this conclusion, in which he argues the state court "correctly concluded that federal law was ignored in state court habeas summary denial decisions which contained, 'no reasoning, analysis, findings of fact, or legal basis for denial of . . .claims.'" (Document #27, at 18) (citing *Helton,* 233 F.3d at 1326-27).

Petitioner's claims are without merit. The Circuit Court in petitioner's case did not summarily deny his Rule 32 petition. The Circuit Court signed a sixty-seven (67) page Order ruling on the issues presented by petitioner in his Rule 32 petition. The content of that Order contains reasoning, analysis, findings of fact and legal analysis. What petitioner is truly complaining about is the trial court's adoption of an order proposed by the state. Such action does not translate into a failure by the trial court to make its own decisions concerning the issues presented in the Rule 32 petition.

## II. *Batson*

Petitioner also presents three reasons why he believes the magistrate judge erred in failing to recommend relief based upon his *Batson* claim. Petitioner contends he has provided prima facie evidence the prosecutor used "its peremptory challenge[s] . . . to exclude 8 out of 14 black venire members (57%) but struck only 10 out of 24 white venire members (29%) who were qualified to serve as jurors." *Id.* at 19. However, the magistrate judge discounted this evidence by misconstruing the record on appeal, thus recommending that any prima facie evidence of discrimination was eroded because petitioner also struck black venire-members and because three black venire-members were chosen to serve on the jury.

2

With regard to the first reason, petitioner contends the facts "before the court on direct appeal were the same as the facts on collateral review and in federal court." *Id.* at 21. Petitioner argues he did not introduce new facts into the record. Instead, counsel contends he is permitted to "analyze [those facts] in any way which a court finds persuasive." *Id.* (citing *Muller v. Oregon,* 208 U.S. 412, [28 S.Ct. 324, 52 L.Ed 551 (1908)(the Brandeis brief)).

Petitioner declares his analysis of the *Batson* issue in this case shows the magistrate judge should have considered petitioner's proposed method of statistical analysis to be in the nature of a "Brandeis brief." *Id.* Moreover, the magistrate judge should have found "[i]t . . . useful to compare]" the number of jurors struck in Maxine Walker's (petitioner's co-defendant) trial to those struck in petitioner's trial. In Maxine Walker's case (which involved the same District Attorney who prosecuted petitioner's case), the Court of Criminal Appeals found a prima facie case of discrimination because D.A. Rumsey "struck 11 of the 15 black venire members (73%) as contrasted with 9 of the 36 white venire members (25%)", . . . . "even though four blacks served on Walker's jury." *Id.* at 24 (citing *Walker v. State*, 586 So.2d 49 (Ala.Cr.App. 1991)).

Second, petitioner contends the fact petitioner struck three potential black venire members himself is irrelevant to the question of whether petitioner has established a prima facie case of discrimination. *Bui v. Haley*, 279 F.3d 1327, 1339 n. 17 (11th Cir. 2002).

Finally, petitioner contends that the magistrate judge's reliance on *Central Alabama Fair Housing Center v. Lowder Realty Co.,* 236 F.3d 629, 638 (11th Cir. 2000)("*Central*"), is misplaced, as that court's assertion "that the unchallenged presence of a particular race on a jury substantially weakens the basis of a prima facie case of discrimination under p[e]remptory striking of jurors of that race[,]" is mere dicta in light of *Cochran v. Herring*, 43 F.3d 1464, 1412 (11th Cir. 1995).

3

Conclusion

Petitioner is correct that even if a defendant also arguably has unclean hands because he too struck members of a particular race from a jury venire, same is irrelevant in the consideration of whether petitioner has made a prima facie case of discrimination. Thus, that portion of the magistrate judge's report and recommendation is due to be rejected.

Petitioner now clarifies he only introduced "the Fisher exact test" and the formulation of the jury in Maxine Walker's case as "Brandeis brief facts," not as evidence in support of nor proof of a prima facie case of discrimination. *Logiodice v. Trustees of Maine, Cent. Institute*, 296 F.3d 22, 30 (1st Cir. 2002). He concludes the magistrate judge could have found same to be persuasive or helpful.

This court finds a review of the Fisher exact test to be unnecessary because the magistrate judge recommended the percentage of black jury venire-members struck in petitioner's case should be considered statistically significant. (Report and Recommendation, at 33 (citing *Central,* 236 F.3d at 637)). "'[A] challenge rate nearly twice the likely minority percentage of the venire strongly supports a prima facie case under [*Batson*].'")(other citation omitted)). Second, the statistical impact of black venire members struck in Walker's case was far greater than in petitioner's case.

Further, the magistrate judge's reliance on *Central* is not flawed, nor is the material portion of *Central* to which he referred mere dicta in light of *Cochran v. Herring,* 43 F.3d 1404, 1411-12 (11th Cir. 1995). In *Cochran*, the Eleventh Circuit quoted *United States* v. *Allison*, 908 F.2d 1531, 1537 (11th Cir. 1990), *cert. denied*, 500 U.S. 904, 111 S.Ct. 1681, 114 L.Ed.2d 77 (1991), writing,

> In *Allison*, the Government used three out of six peremptory challenges to strike black jurors. However, the [*Allison*] court found that the "unchallenged presence of three blacks on the jury undercuts any inference of impermissible discrimination that might arise simply by the striking of other blacks."

4

The *Cochran* court went on to state, "although the seating of the jury is a significant fact, it does not

bar a finding of racial discrimination. *Allison*, 908 F.2d at 1507." *Id.* at 1412. Petitioner argues

*Cochran's* holding means "the presence of some blacks on the jury [are] insufficient to rebut [a]

prima facie case." (Document #27, at 20). Thus, he contends evidence of blacks on the jury can

only be rebuttal evidence in response to a prima facie showing of racial discrimination.

However, the *Cochran* court did not find such evidence was only relevant to the state's

burden of showing a racially neutral reason for striking jurors after a prima facie case had been

established. Further, the United States Supreme Court in *Batson* instructed trial courts to consider

all relevant circumstances when deciding whether a defendant has made a prima facie showing of

discrimination. *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). It wrote,

> A defendant making allegations regarding the improper use of peremptory strikes
> against jurors of a suspect class "may make out a prima facie case of purposeful
> discrimination by showing that the totality of the relevant facts gives rise to an
> *inference* of discriminatory purpose . . . . Once the defendant makes the requisite
> showing, the burden shifts to the State to explain adequately the racial exclusion."
> (emphasis added).

*Id.* at 94 (citing *Washington v. Davis,* [426 U.S. 229, 239-242, 96 S.Ct. 2040, 2047-2049, 48

L.Ed.2d 597 (1976))]and *Alexander v. Louisiana,* [405 U.S. 625, 632, 92 S.Ct. 1221, 1226, 31

L.Ed.2d 536 (1972))]. Elsewhere, the Court repeated that it was the defendant's burden to

> show that these facts and any other relevant circumstances raise an inference that the
> prosecutor used that practice to exclude the veniremen from the petit jury on account
> of their race. This combination of factors in the empaneling of the petit jury . . .
> raises the necessary inference of purposeful discrimination.

*Batson*, 476 U.S. at 96.

Thus, it was in the Alabama Supreme Court's discretion to review the entire record, and take

into consideration the percentage of black venire persons struck by the prosecutor and seated on the

5

jury when considering whether petitioner made a prima facie case of discrimination.  It was also within that Court's discretion to determine, based upon the statistical information and the make up of the jury, that petitioner failed to establish a discriminatory inference created by the prosecution's use of peremptory strikes.  Accordingly, the state court's decision was not contrary to federal law nor was it an unreasonable interpretation of the facts in light of the evidence before it.

## III. Second statement

Petitioner contends the magistrate judge erred when he recommended petitioner's second confession was not obtained in violation of petitioner's right to counsel pursuant to *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct 1602, 16 L.Ed.2d 694 (1966) or *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 1885, 68 L.Ed.2d 378 (1981).  *Id.* at 26.  Petitioner argues his five (5) day isolation and investigator Frankie Wallace's admonishment that petitioner should "'tell the truth and quit lying,'" was a psychological ploy designed to coerce a confession from petitioner in violation of *Miranda* and *Edwards*.  Petitioner cites two cases in support of his contention that he was coerced by prolonged police custody.  In *In Re Guido*, 704 F.2d 675 (2d Cir. 1983), the Second Circuit found the defendant's Miranda rights had not been violated when, after defendant's arrest and invocation of counsel, he asked what he was arrested for while in the police car on the way to the jail, and was told it was a drug offense, that he should consider cooperating with the police and that he should consider discussing cooperation with his attorney.  *Id.* at 675.  The defendant also began asking specific questions about the details of the drug offense for which he had been arrested in the booking room of the jail, and when he received a response from the police, exclaimed "Oh Christ. Okay. I knew that one was trouble." *Id.*

6

The *Matter of Appeal in Maricopa County*, 678 P.2d 445 (Ariz. 1984)(en banc), involved a juvenile offender who, after five (5) days in juvenile detention, was taken to a court hearing at which he asserted his right to remain silent and right to counsel, but then confessed to his parole officer when the officer approached the juvenile immediately after the court hearing and told the juvenile that anything he said would be kept confidential.

Neither a suggestion of cooperation nor spontaneous assertion by an adult defendant, much less a confession of a juvenile upon being informed said information would remain confidential, are comparable to the circumstances surrounding petitioner's confession. Petitioner's second confession was not attained in violation of his Fifth or Sixth Amendment right to counsel. In fact, his Sixth Amendment right to counsel had not yet attached because he had not been formally charged at the time he made his confession. *McNeil v. Wisconsin,* 501 U.S. 171, 180, 111 S.Ct. 2204, 2210, 115 L.Ed.2d 158 (1991); and *Patterson v. Illinois*, 487 U.S. 285, 296, 108 S.Ct. 2389, 2397, 101 L.Ed.2d 261 (1988).

## IV. <u>Heinous, Atrocious, and Cruel</u>

Petitioner contends the magistrate judge erred when he found the state court's finding that the petitioner's offense was heinous, atrocious and cruel (HAC) to be neither contrary to federal law nor an unreasonable interpretation of the facts presented during state court proceedings. (Document #27, at 29-30). Specifically, petitioner contends the magistrate judge erred when he "asserted that this court is procedurally barred from considering the fact that the HAC factor was not found in either of the two co-defendants' cases" because petitioner presents this claim for the first time in this petition. *Id.* Petitioner's argument is without merit. The HAC factor was presented in the context of the co-defendants' cases, but only in connection with petitioner's ineffective assistance of counsel

7

claims, not as part of a claim that the HAC factor is unconstitutionally vague on its face or as applied. Further, the Court of Criminal Appeals only addressed these issues as part of petitioner's ineffective assistance of counsel claims.

Petitioner also contends the magistrate judge was mistaken when he found the Alabama Court of Criminal Appeals was correct in making its harmless error conclusion in connection with the faulty HAC jury instruction. *Id.* at 30. He believes the case[1] relied on by the magistrate judge "fail[s] to distinguish controlling Supreme Court decisions that make clear that homicides of this nature cannot, as a matter of federal constitutional law, justify the death penalty." *Id.* at 31 (citing *Godfrey v. Georgia*, 446 U.S. 420, 428-29, 100 S.Ct. 1759, 1765, 64 L.Ed.2d 398 (1980), *Clemons v. Mississippi,* 494 U.S. 731, 740, 110 S.Ct. 1441, 1443-44, 108 L.Ed.2d 725 (1990) and *Maynard v. Cartwright*, 486 U.S. 356, 361-64, 108 S.Ct. 1853, 1857-59, 100 L.Ed.2d 372 (1988)). The aforementioned cases are only material to the extent that they address the potentially unconstitutional overbreadth of a "heinous, atrocious and cruel" jury instruction and the ability of a state appellate court to cure such a deficient HAC instruction if that state has provided adequate constitutional limitations on the application of the factor in that state. *Id.*

Alabama has a limiting construction of the heinous, atrocious and cruel factor. In Alabama, the HAC factor is limited to crimes "of such a nature that [are] 'conscienceless or pitiless' and 'unnecessarily torturous to the victim . . . .'" *Id.* at 1174-75 (citing *Ex parte Whisenhant*, 555 So.2d 235, 244 (Ala. 1989), *cert. denied* 496 U.S. 943, 110 S.Ct.3230, 110 L.Ed.2d 676 (1990), quoting *Ex parte Kyzer*, 399 So.2d 330, 334 (Ala. 1981)). Petitioner believes the Court of Criminal Appeals

---

[1] *Hardy v. State*, 804 So.2d 247 (Ala.Cr.App. 1999), *aff'd*, 804 So.2d 298 (Ala. 2000), *cert. denied*, 534 U.S. 1043, 122 S.Ct. 621, 151 L.Ed.2d 543 (2001).

did not cure the trial court's constitutionally deficient HAC instruction because it did not recognize the proper limiting construction of the HAC factor in Alabama. (Document #27, at 31).

Petitioner has never disputed that his crime was conscienceless or pitiless. Instead, he stresses that for sentencing purposes in Alabama, the "unnecessarily torturous" portion of the HAC factor is analyzed by placing "the emphasis . . . on the manner of the killing, not on the defendant's actual participation." *Id.* at 33 (citing *Ex parte Bankhead*, 585 So.2d 112, 125 (Ala. 1991)).

Petitioner contends the medical evidence shows the victim's death in this case was instantaneous and therefore cannot be considered unnecessarily torturous to the victim. *Id.* at 32. Petitioner also finds fault with the appellate court's reliance upon *Bush v. State,* 431 So.2d 555, 560-60 (Ala.Cr.App. 1982), in finding petitioner's crime to be heinous, atrocious, and cruel because he believes *Bush* is distinguishable from his case. *Id.* at 33. Specifically, petitioner declares the *Bush* court found the defendant's crime to be heinous, atrocious and cruel because the defendant shot a victim in the face to avoid later identification. *Id.* However, he fails to give proper credence to the appellate court's finding that such a shooting took place after the victim already had been shot in the chest, and he does not acknowledge the *Bush* court's assertion that, "Execution-type slayings evincing a cold, calculated design to kill, fall into the category of heinous, atrocious or cruel." *Bush,* 431 So.2d at 560.

Moreover, in *Hubbard v. State*, 500 So.2d 1204, 1227 (Ala.Cr.App. 1986), the Alabama Court of Criminal Appeals found the defendant had committed a murder for pecuniary gain, and that the crime was heinous, atrocious and cruel because the victim was alive and possibly conscious for a time after being shot in the mouth, lying on the kitchen floor, when the defendant returned and shot her in the head. *Id.*

9

Regardless of the question of instantaneous death, Alabama law recognizes mental as well as physical torture, and the state court made it clear when it found the HAC factor in petitioner's case, it was because the victim's last minutes of life were filled with terror.[2]  Accordingly, the appellate court's harmless error review was not contrary to nor did it involve an unreasonable application of federal law or constitute an unreasonable determination of the facts in light of the evidence presented in state court.

Finally, this court rejects petitioner's assertion that the magistrate judge erred when he recommended, as procedurally barred, petitioner's argument that the HAC factor has been unconstitutionally applied by Alabama courts since the 1990s. First, petitioner admits he could have raised these arguments[3] at sentencing, on a motion for new trial, or on direct appeal, but believes he should be excused from this failure because petitioner "did not know until 1999, when the Court of Criminal Appeals expressly ruled in his case that there was no problem finding HAC for one defendant in a death penalty case and non-HAC for another." *Id.* at 34-35. Petitioner's claim is without merit. "In order to show cause for not raising a claim in an earlier petition, a petitioner must show 'some external impediment preventing counsel from constructing or raising the claim.'" *High v. Head,* 209 F.3d 1257, 1262 (11th Cir. 2000) (quoting *McCleskey v. Zant,* 499 U.S. 467, 497, 111 S.Ct. 1454, 1472, 113 L.Ed.2d 517 (1991)). "Examples of objective factors external to the defense that constitute cause include interference by officials and 'a showing that the factual or legal basis

---

[2] *Hardy v. State,* 804 So.2d 247 (Ala.Cr.App. 1999), *aff'd,* 804 So.2d 298 (Ala. 2000), *cert. denied,* 534 U.S. 1043, 122 S.Ct. 621, 151 L.Ed.2d 543 (2001). See also *Bush v. State,* 431 So.2d 555, 560-61 (Ala.Cr.Ap. 1982).; *Knotts v. State,* 686 So.2d 431, 447 (Ala.Cr.App. 1995).

[3] Petitioner also contends that he is "puzzled" because the magistrate judge refused to assume, without petitioner providing any evidence that the heinous, atrocious or cruel factor was presented in co-defendant Mac Lawhorn's action. This court will not assume facts not in evidence.

10

for the claim was not reasonably available to counsel.'" *Id.* at 1263, *quoting Murray v. Carrier,* 477 U.S. 478, 488, 106 S.Ct. 2639, 2645, 91 L.Ed.2d 397 (1986)).

The factual and legal basis for this claim arose when Lawhorn was convicted and sentenced. It was at that point the inconsistent HAC factor findings became apparent. Petitioner could have compared his case to Maxine Walker's case as persuasive argument to prevent a finding of the heinous, atrocious or cruel factor at his sentencing hearing, in a motion for new trial or on direct appeal. Further, Lawhorn could have presented this claim in his petition for writ of certiorari, and certainly at any level of the state collateral proceedings. Because he has failed to show legal cause for his failure to present this claim prior to the present petition, this court is procedurally barred from considering the merits of same.

## V. Ineffective Assistance of Counsel claims.

Petitioner claims the magistrate judge erred when he found that the following ineffective assistance of counsel claim was procedurally barred because it was not raised on collateral appeal: "[F]ailure to investigate or present a cohesive defense theory and focus on relevant issues." (Document #27, at 38). This claim has been waived by Petitioner failure to specifically present it on collateral appeal.

Nonetheless, a review of the Court of Criminal Appeals' opinion on collateral appeal in *Lawhorn v. State,* 756 So.2d 971, 981 (Ala.Cr.App. 1999), shows the appellate court credited the trial court's finding that "'[t]rial counsel did investigate, prepare and present a coherent theory of defense at the guilt stage . . and did focus on relevant defenses,'" when it found that counsel "adequately prepare[d] and adequately present[ed] a defense for Lawhorn at the guilt stage." Thus,

11

it can be reasonably concluded that this issue was addressed on the merits by the appellate court, even if petitioner failed to raise it as a discrete issue.

However, the fact that said claim was arguably addressed on the merits does not alter the magistrate judge's recommendation that counsel was not ineffective at the guilt stage. The court agrees with the magistrate judge's recommendation that the evidence supporting petitioner's guilt at that phase of the trial was so strong petitioner could not establish he was prejudiced by counsel's failure to develop a defense theory to a constitutionally significant degree. Further, any factual allegations petitioner would have offered in support of that claim are addressed in various other ineffective assistance of counsel claims discussed by the magistrate judge. Nonetheless, for the sake of clarification, that portion of the magistrate judge's recommendation, recommending that the aforementioned claim be considered procedurally barred, is due to be rejected.

Petitioner finds fault with the magistrate judge's assertion that petitioner could have questioned counsel about their loyalty to him after he discovered one attorney was a brother to a prosecuting attorney, and further that petitioner did not reveal what information he would have divulged to those counsel if he had trusted them. *Id.* at 40. Petitioner complains that such a burden should not have been placed on an individual with a ninth grade education. The court is unpersuaded by this argument. Moreover, petitioner has never revealed what information he would have given to counsel had he trusted them.

Second, with regard to the issue of involuntary intoxication, petitioner takes issue with the magistrate judge's finding that

> even if the evidence presented at the Rule 32 Hearing had been presented at trial, and the trial court allowed a jury instruction regarding voluntary intoxication, there is no reasonable probability that the jury would have accepted the defense of voluntary intoxication.

12

*Id.* at 45. Petitioner declares that in making this recommendation, the magistrate judge looked at the evidence in a manner most favorable to the state, when it should have been viewed in a light most favorable to petitioner.

In Alabama, "[t]he degree of intoxication required to show that a defendant was incapable of forming an intent to kill is a degree so extreme as to render it impossible for the defendant to form the intent to kill." *Ex parte Bankhead,* 585 So.2d 112, 121 (Ala. 1991). After a review of the factual allegations in support of this claim, and the magistrate judge's legal conclusions regarding same, this court is satisfied the magistrate judge did not view this claim in a light most favorable to the state. (Document #22, at 88-91). Petitioner has simply failed to show any reasonable probability the jury would have accepted the defense of voluntary intoxication.

Next, petitioner complains the magistrate judge erred when he found counsel was not ineffective for failing to seek expert psychological testimony. (Document #27, at 46). A review of the record, and the recommendation, shows petitioner's argument to be without merit. Other than substance abuse, neither expert at the Rule 32 hearing found that petitioner was suffering from a mental disease or defect. One of the experts surmised that petitioner was borderline mentally retarded, while the other found petitioner to be of low average intelligence. The latter differences were based mainly upon disagreement over petitioner's adaptive skills. Dr. Biedleman did opine that petitioner had a dependent personality, but it was within the trial court's discretion to credit the testimony of Dr. Renfro over Dr. Beidleman concerning petitioner's mental health, particularly when the court had an opportunity to view petitioner himself and found him to be a rather articulate individual for someone with an eighth grade education. As such, the state court's decision was

neither contrary to federal law nor was it an unreasonable determination of the facts in light of the evidence before it.

Petitioner next objects to the magistrate judge's recommendation that the state court's determination that mitigation evidence offered at the Rule 32 hearing was essentially the same as that offered at the sentencing hearing, and his recommendation that the state court correctly ruled trial counsel properly investigated petitioner and other witnesses for testimony, were neither contrary to or involved an unreasonable application of federal law.

In support of his objections regarding the cumulative nature of the mitigating evidence offered at sentencing, petitioner contends the following evidence was not presented at trial: an alcoholic father, abusive and alcoholic stepfathers, witness to his stepfather's shooting death at age 6, an underprivileged childhood where he and his siblings were left to watch themselves while their mother worked or kept company with a boyfriend, transient teenage years in which he rebounded from state to state, various family members and school systems, thus becoming a high school drop-out at 16, the testimony of his brother Jerry Lawhorn and aunt Datherline Lawhorn, and the fact that he was gainfully employed at the time of the murder. *Id.* at 54-58. Petitioner specifically complains neither Jerry Lawhorn nor Datherline Lawhorn testified in his behalf because they were never asked, when in fact both were aware of the trial dates but did not come to the trial, and Jerry Lawhorn stated he did not come to the trial because he did not want to miss work. The court does not find petitioner's objections to be persuasive. Moreover, this court finds it unnecessary to perform a second analysis concerning each and every allegation heretofore listed, particularly when those allegations are adequately detailed and examined in the magistrate judge's report and recommendation.

14

The remainder of petitioner's objections consist of complaints that trial counsel failed to investigate and prepare witnesses for trial, including petitioner, petitioner's mother and the victim's wife; failed to adequately examine petitioner when he took the stand in his own behalf at the penalty phase; and failed to object to a pre-sentence investigation report. *Id.* at 59-70. Again, the court does not find petitioner's objections to be persuasive and finds the magistrate judge's analysis of these issues to be more than adequate.

## VI. The Alabama Death Penalty Statute is Unconstitutional

As admitted by petitioner, this claim is procedurally barred.

## Respondent's objections

## I. Riverside

Respondents contend that petitioner's *Riverside* claim is procedurally barred because same was not raised at trial or on appeal. (Document #29, at 1-15). This issue was raised before the Alabama Supreme Court, reviewed, and found to harbor no reversible error. Therefore, petitioner's *Riverside* claim is not procedurally barred and should not have been deemed barred by the state court during collateral proceedings. Moreover, this court finds it unnecessary to perform a second analysis concerning this claim, particularly when the allegations and issues objected to are adequately detailed and examined in the magistrate judge's report and recommendation. This court is equally unpersuaded with respondents' argument that the purpose of *Riverside* is to deter unlawful police conduct and that due to the length of time which has elapsed since petitioner's conviction, there would be no deterrent effect by suppressing petitioner's confession as fruit of the poisonous tree.

15

## II. <u>Improper Prosecutorial Argument</u>

Respondents contend the magistrate judge erred when he recommended the prosecutor's remarks on patriotism be found to be improper. *Id.* at 16-22. First, respondents complain petitioner's claim is a bare assertion unsupported by facts, and declare petitioner failed to cite that portion of the record to which he is referring. Next, respondents argue the prosecutor's argument was not improper.

After considering same, this court finds petitioner adequately stated the claim in his petition. However, it is not convinced the argument was improper. The magistrate judge relied on *Brooks v. Kemp*, 762 F.2d 1383, 1412 (11th Cir. 1985), as support for his recommendation that the prosecutor's argument was improper. In *Brooks*, the prosecutor gave a lengthy argument to the jury about the "war on crime," and the general criminal element, while comparing the jurors' role to that of a soldier in battle whose duty it is to kill the enemy.

In *Davis v. Kemp*, 829 F.2d 1522, 1527 (11th Cir. 1987), the prosecutor also spoke about patriotism and the duty of soldiers. However, unlike *Brooks*, the prosecutor did not ask the jury to punish the defendant because he was part of a larger criminal element. Instead, he pointed to the defendant personally and individually when arguing that the underlying circumstances of the particular crime he committed merited the death penalty. Like *Brooks*, the prosecutor in this action made patriotic references. However, he did not inform the jurors that they had a duty to recommend the death sentence as citizen soldiers sworn to ameliorate the criminal element in an ongoing "war on crime."

The court finds the prosecutor's comments to be more closely akin to those of the prosecutor in *Davis v. Kemp*. Rumsey did make patriotic statements and referred to the duty of soldiers, but

he also pointed to the circumstances surrounding petitioner's crime and petitioner's intimate involvement in that crime. Rumsey did not place his comments inside a general diatribe on the "war on crime," nor did he strongly infer that the jury must return a recommendation of death against petitioner in order to punish the criminal element of society, thus transforming petitioner into a nameless enemy on whose shoulders the entire responsibility for crime lay. Therefore, Rumsey's remarks did not deprive petitioner of individualized consideration before the jury, and as such, were not improper.

### III. Clarification regarding petitioner's "R" and "S" claims.

The magistrate judge recommended the claims purportedly set out in Sections "R" and "S" of the petition for writ of habeas corpus be denied because same were without sufficient detail or clarity to state a constitutional violation pursuant to § 2254(e)(2). (Document #29, at 23). While respondents agree with the magistrate judge's recommendation, they also request that this court also deny the claims because same involve only questions of state law. However, respondents fail to divulge the state law(s) for which they desire affirmation. This court declines respondents' request.

### IV. Ineffective Assistance of Counsel.

Respondents contend the magistrate judge should have recommended petitioner's ineffective assistance of counsel claim, the underlying basis being failure to raise and argue the *Riverside* issue on appeal, be denied on the basis that same is procedurally defaulted. *Id.* at 23-24. In his report and recommendation, the magistrate judge wrote,

> The Alabama Court of Criminal Appeals incorrectly concluded that petitioner's claim of ineffective assistance regarding the *Riverside* issue was raised for the first time on collateral appeal. Petitioner specifically identified the *Riverside* violation as an erroneous ruling by the trial court. The statement in paragraph kk, [of the petitioner second amended Rule 32 petition,] also alleges that appellate counsel was ineffective because he failed to brief issues that were identified in the

17

> preceding sections of the petition. The undersigned magistrate judge believes this
> was sufficient to put the respondent on notice that this issue was also being raised as
> an issue of ineffective assistance. However, for the reason set out above, this error
> is irrelevant to the court's recommendation.

(Document #22, at 18, n. 1).

This court has carefully reviewed those portions of the Rule 32 petition to which the

magistrate judge referred and finds petitioner's ineffective assistance of counsel claim is not

procedurally barred.

## V. **Ineffective Assistance of Counsel U(1).**

Respondents declare the magistrate judge erred when he recommended that trial counsel's

failure to investigate and develop evidence regarding mitigating evidence was not procedurally

defaulted. (Document #29, at 25-26). First, the magistrate judge did recommend the claim, that

counsel failed to investigate and develop evidence at the guilt phase, be deemed defaulted.

(Document #22, at 81). Further, while the Alabama Court of Criminal Appeals found that the failure

to investigate and develop evidence at the penalty phase was defaulted, at least as far as it applied

to counsel's attempt to obtain a psychologist for the benefit of petitioner, it also reviewed the merits

of that claim. *Lawhorn v. State,* 756 So.2d 971, 988-89 (Ala.Cr.App. 1999). Under the plain

statement rule, a federal district court may consider a claim "when a state court's decision created

an ambiguity over whether the decision was based on the merits or on the application of a procedural

bar." *Morrison v. Thigpen*, 1995 WL 914616, *6, — F.Supp. —, (M.D. Ala. Jan. 19, 1995) (*citing*

*Michigan v. Long*, 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983)).

Respondents argue the Court of Criminal Appeals did not address the heretofore described

claim on the merits, and the magistrate judge took the pertinent portions of the Court of Criminal

18

Appeals' opinion out of context. Thus, they conclude the magistrate judge's recommendation was based upon a false ambiguity.

Specifically, respondents contend the Court of Criminal Appeals only addressed petitioner's claim that his trial counsel failed to obtain a psychologist, not a claim that trial counsel failed to have petitioner examined by an expert psychologist. There is no logical reason for arguing that the failure to obtain a psychologist claim is preserved but can only be considered in a vacuum, particularly when the appellate court acknowledged, through the testimony of petitioner's attorney as accepted by the trial court, that the purpose of obtaining the psychologist was to examine the petitioner to present mitigating circumstances, that there was nothing in the assessment which could have established a mitigating circumstance, and that petitioner was not prejudiced by counsel's failure. *Lawhorn v. State,* 756 at 988 (citing Rule 32 transcript, at 466-67). Accordingly, respondents' objection is without merit.

## VI. Ineffective Assistance of Counsel U(2)

Respondents declare the magistrate judge erred when he recommended petitioner's claim that trial counsel was ineffective because his consultation with petitioner about his right to testify in his own behalf was procedurally barred. (Document #29, at 26-27). Respondents admit petitioner raised this claim before the Rule 32 trial court but contend petitioner failed to raise his claim on collateral appeal nor argue the claim in his appeal brief.

The magistrate judge acknowledged petitioner did not raise the above claim on collateral appeal, a finding also made by the Court of Criminal Appeals. However, the magistrate also determined the Court of Criminal Appeals addressed the merits of the claim, and therefore recommended that this claim was not procedurally barred. Respondents complain the magistrate

19

judge did not reference the part of the record upon which he made his recommendation.  In their opinion, petitioner only argued his attorney was ineffective because he failed to adequately prepare petitioner and other witnesses to testify at the penalty phase of the trial.

The court is persuaded by respondents' objections.  The appellate court did not specifically address any failure to adequately consult petitioner about his right to testify at the penalty phase of the trial.  To the extent that inadequate consultation was addressed, it was mostly in the context of whether petitioner and his witnesses were prepared in such a manner that more favorable testimony could be elicited about the petitioner's background for the penalty phase of the trial.  *Lawhorn v. State,* 756 So.2d at 986.  However, within the same analysis the appellate court wrote,

> We too have compared the testimony presented at Lawhorn's trial and the testimony presented at the Rule 32 hearing and find that the evidence presented was essentially the same.  While Lawhorn urges us to believe that more graphic details elicited during the penalty phase may have had an influential impact on the jury, this is pure speculation, especially considering the fact that Lawhorn, himself, and his mother during his trial, begged for mercy.  Lawhorn has not shown that his counsel's performance was  deficient in this regard; nor has he shown that he was prejudiced by his counsel's performance.

*Id.*

This discussion of damaging details elicited at the penalty phase may have spurned the magistrate judge's recommendation regarding the  adequacy of trial counsel's explanation and preparation of petitioner concerning his right to testify, especially the consequences of choosing to testify in his own behalf, and the chance that cross-examination could not only result in unfavorable (as opposed to favorable) testimony, but also destroy the benefits of any favorable testimony about his background.  However, it appears to the court that this interpretation is simply too remote from the discrete issue actually addressed by the appellate court.  Accordingly, the magistrate judge's

20

recommendation that petitioner's claim of inadequate consultation about his right to testify at the penalty phase of the trial was not procedurally barred is due to be rejected.

**VII.   Ineffective Assistance of Counsel U(11)**

Respondents contend the magistrate judge erred when he recommended that trial counsel's failure to ask the jury to spare his client's life was not procedurally defaulted. (Document #29, at 28-29).   Respondents admit the Rule 32 trial court mentioned this failure in its order denying the Rule 32 petition, but they argue it was only addressed within the context of failure to make a closing argument and, in any event, petitioner failed to raise the issue on collateral appeal.

In this habeas petition, petitioner argued that his counsel was ineffective for failing to ask the jury to spare his client's life at the penalty and sentencing phase.  Therefore, the magistrate judge addressed the question of procedural default at both stages.  The magistrate judge recommended the penalty phase aspect of the claim be found to be procedurally defaulted but did not recommend the sentencing aspect of the claim be found to be procedurally defaulted.  (Document #22, at 79).

Further, the magistrate judge did not consider the failure of trial counsel to ask the jury to spare his client's life as a discrete claim in the report and recommendation.  This factual allegation was addressed as part of losses petitioner endured as a result of counsel's failure to make a closing argument, which is precisely how the state appellate court considered it, a fact which is readily acknowledged by respondents.  *Lawhorn v. State,* 756 So.2d at 987.

**VIII.   Ineffective Assistance of Counsel. U(f)**

Respondents contend petitioner did not raise counsel's failure to call the victim's wife as a witness as a discrete claim in his petition for writ of habeas corpus. (Document #29, at 29-31).  A review of the petition for writ of habeas corpus shows petitioner did raise this claim under the

heading, "The petitioner was denied his right to effective assistance of counsel at the penalty and sentencing phases and on appeal." (Document #1, at 28-29). Underneath that heading, petitioner alleged his trial counsel found the wife's testimony to be unimportant, and he also alleged Roger Appell, a criminal defense expert, expressed in his professional opinion at the Rule 32 hearing, that the failure to call her as a witness was ineffective assistance of counsel. *Id.* Further, respondents entered a denial to these allegations in their answer. (Document #13, at 66).

Respondents now argue said allegations were not a discrete claim proffered by petitioner and request permission to amend their answer to the complaint. (Document #30). Respondents motion is due to be DENIED. However, the only testimony that has been evoked on this matter is from petitioner's mother and sister. Since the trial court found the testimony of these witnesses to be biased and therefore entitled to less credit, as was within his discretion, petitioner cannot show he was prejudiced by the failure of counsel to present the victim's alleged opinion, and as such, he is not entitled to relief on this claim. Accordingly, the magistrate judge's report and recommendation regarding this claim is due to be rejected.

## IX. Ineffective Assistance of Counsel U(6)

The court has reviewed respondents' objections to the magistrate judge's recommendation that counsel's failure to make a closing argument constituted prejudicial ineffective assistance of counsel, and finds same to be unpersuasive. (Document #29, at 32-38). Moreover, this court finds it unnecessary to perform a second analysis concerning this claim, particularly when those allegations are adequately detailed and examined in the magistrate judge's report and recommendation.

## OPINION

For the foregoing reasons, the magistrate judge's report and recommendation is due to be ADOPTED and his recommendations ACCEPTED, with the exception of the following portions of the recommendation described hereinbelow.

The magistrate judge's report and recommendation is due to be REJECTED to the extent that the magistrate judge recommended that:

(1) petitioner's act of striking black venire members was relevant to the question of whether petitioner made a prima facie discrimination claim, (2) the prosecutor's patriotic argument at closing be deemed improper, (3) petitioner's claim that he was denied ineffective assistance of counsel because of counsel's failure to develop a cohesive defense theory at the guilt stage was procedurally barred, (4) petitioner's claim of inadequate consultation about his right to testify at the penalty phase of the trial was not procedurally barred, and (5) failure to bring forth the testimony of the victim's wife constituted ineffective assistance of counsel.

Accordingly, the petition for writ of habeas corpus filed by petitioner is due to be GRANTED and RELIEF is due petitioner as follows:

1. Petitioner was subjected to an unconstitutional delay in securing a judicial determination of probable cause for his warrantless arrest in violation of the Fourth Amendment to the United States Constitution. The appropriate remedy for this violation is suppression of the confession elicited from petitioner as a result of the delay. Therefore, petitioner's conviction is due to be VACATED.

2. Petitioner's trial counsel was ineffective for failing to make a closing argument in petitioner's behalf at the penalty phase of the trial. Said failure violated petitioner's right to counsel

23

pursuant to the Sixth Amendment of the United States Constitution. The appropriate remedy for this violation is a new penalty hearing. Therefore, petitioner's death sentence is due to be VACATED.

Finally, respondents' motion to amend their answer (Document #30) to the petition is due to be DENIED.

An appropriate order will be entered.

DATED this __19th__ day of ___March___, 2004.

_____
Chief United States District Judge
U.W. Clemon

24